OPINION
{¶ 1} Defendant-appellant, Pep Boys — Manny, Moe Jack of Delaware, Inc. ("Pep Boys"), appeals from a judgment in favor of plaintiff-appellee, Carol Vaughn, on her action for negligence and violation of the Ohio Consumer Sales Practices Act ("CSPA"). For the following reasons, we affirm.
 {¶ 2} In early August 2003, Vaughn noticed that her car, a 1995 Buick LaSabre, was using more oil than it normally did. Vaughn, who prides herself on maintaining her car in good condition, asked her nephew, Gregory Nixon, to take the car to the West Broad Street Pep Boys, so that its mechanics could determine whether an oil leak existed and, if one did, repair it. Vaughn chose Pep Boys because a Pep Boys garage was located near her home and she believed that she could trust Pep Boys' mechanics to perform good work.
 {¶ 3} On August 30, 2003, Nixon drove the car to Pep Boys and asked that it be checked for an oil leak. Nixon later received a phone call from a Pep Boys' employee, in which the employee informed him that a Pep Boys' mechanic had found an oil leak in the oil filter, and that the mechanic had repaired the leak. On September 1, 2003, Nixon returned to Pep Boys, claimed his aunt's car, and paid the $151.66 bill. Nixon was given an invoice and receipt, both of which stated that Pep Boys' mechanics had performed an oil leak diagnostic test and changed the oil in the car. Nixon then drove his aunt's car to her home without incident.
 {¶ 4} The next morning, Vaughn could not get her car to start. Vaughn telephoned Nixon for help. When Nixon arrived at his aunt's home, he checked the car's oil level and discovered that there was no oil in the engine. Nixon added oil to the car and then "jumped" the car to get it started. Meanwhile, Vaughn telephoned Pep Boys and told an employee that she had just gotten her car repaired there, and not only was it not running, but it also had no oil in it. In response, the Pep Boys' employee offered to deduct the cost of the oil from her next bill.
 {¶ 5} On September 3, 2003, Nixon drove Vaughn's car back to Pep Boys. During this second visit, Michael Barnhart, an ASE master technician, worked on the car. Barnhart performed a second oil leak diagnostic test in order to determine whether the engine was leaking oil. At trial, Barnhart testified that he conducted the oil leak diagnostic test according to Pep Boys' policy. First, he injected a dye that fluoresces under an ultraviolet light into the engine oil. He then drove the car from five to seven miles at speeds between 45 and 50 miles per hour. Upon returning to the garage, Barnhart shone an ultraviolet light on the engine, and from the presence and location of the dye-infused oil, determined that the car was leaking oil from the front timing cover gasket.
 {¶ 6} To fix the leak, Barnhart removed the water pump, crank shaft pulley, timing cover, and timing cover gasket from the engine. He then attached a new timing cover gasket and reassembled the engine. Next, Barnhart performed the entire oil leak diagnostic test again to ascertain whether the leak was fixed. After this final test, Barnhart did not observe any dye-infused oil on the engine, and thus, he concluded that the engine was no longer leaking oil.
 {¶ 7} When Nixon collected the car on September 7, 2003, a Pep Boys' employee told him that the oil leak was fixed. Nixon paid the $320.24 bill and returned the car to his aunt's home.
 {¶ 8} That same day, Vaughn was driving to the east side of Columbus when she sensed something was wrong with her car. She pulled over, checked her oil level, and discovered that there was no oil in the engine. Surprised, she asked a passerby to check the oil level for her. That person also found that the car did not have any oil in it. The passerby added to the engine the three or four quarts of oil Vaughn had stored in her trunk, and told Vaughn that her engine was still a quart shy of full. Vaughn went to a gas station, purchased a quart of oil and added that oil to the engine. Vaughn then completed her errand and drove to Lancaster. While driving back to her home, Vaughn stopped at the Hamilton Road Pep Boys and asked them to check the oil level. A Pep Boys' employee told her that the car was a quart low, and he added a quart of oil to the engine.
 {¶ 9} A day or two after her trip to Lancaster, Vaughn noticed a knocking noise coming from her engine. On September 19, 2003, she drove her car to Pep Boys, told an employee about the noise, and asked that a mechanic check the car. Upon hearing the noise, Jimmy McDowell, an ASE master technician, immediately deduced that a rod was knocking on the bottom of the engine. A Pep Boys' employee told Vaughn that her engine had thrown a rod and that she would need a new engine. The employee quoted a price of $3,781.09 to replace the engine.
 {¶ 10} Vaughn was in a quandary. She did not have the money to replace the engine, but she knew her car would deteriorate if she left it idle throughout the winter. Finally, in early February 2004, Vaughn used a credit card to pay $3,019.66 for AA Engine Installers to replace her engine. While Vaughn was without the use of her car, she drove her neighbor's car and compensated her neighbor, Mabel Beach, with $50 a week.
 {¶ 11} On January 29, 2004, Vaughn filed a suit against Pep Boys, in which she alleged that Pep Boys violated the CSPA and acted negligently when it performed work on her car. With regard to her CSPA claim, Vaughn specifically asserted that Pep Boys committed deceptive acts as defined in R.C. 1345.02(B)(1), (2), and (5) by representing:
(a) That the subject of the said consumer transaction ha[d] sponsorship, approval, performance characteristics, accessories, uses or benefits that it [did] not have;
(b) That the subject of the consumer transaction [was] of [a] particular standard, quality, grade, style, prescription, or model[,] and it [was] not;
(c) That the consumer transaction ha[d] been supplied in accordance with previous representations[,] and it ha[d] not.
(Complaint at ¶ 9.) Also, Vaughn asserted that Pep Boys committed a deceptive act as defined by Ohio Adm. Code109:4-3-05(D)(9), one of the rules the Attorney General adopted pursuant to R.C. 1345.05(B)(2), when it represented that it had made repairs and performed services, when it had not done so. Finally, Vaughn asserted Pep Boys violated the CSPA by maintaining a pattern of inefficiency and incompetency in repairing her car and in performing the repairs in an unworkmanlike manner.
 {¶ 12} A jury trial on Vaughn's claims commenced on September 21, 2004. At trial, Vaughn, Nixon, and Barnhart testified regarding the events set forth above. Additionally, William Betzler, an expert witness Vaughn hired, testified regarding his October 13, 2003 inspection of the car, as well as the opinions he developed based upon that inspection and his review of the Pep Boys' work orders and invoices. Betzler opined that, given the fresh oil he observed on the underside of Vaughn's car, the engine was still leaking oil. Additionally, Betzler testified that the damage to Vaughn's car engine was caused by a lack of oil, and the lack of oil was due to Pep Boys' incompetence in failing to first find, and then to repair, the leak. Finally, Betzler testified that Pep Boys failed to perform in a workmanlike manner and that Pep Boys displayed a pattern of incompetency.
 {¶ 13} Pep Boys countered Betzler's testimony with Barnhart's differing opinions. Testifying as an expert witness, Barnhart stated that the oil on the underside of the car was not from an ongoing leak, but was residue from the leak in the timing cover gasket, which he repaired. Barnhart further testified that the damage to the engine was caused over a long period of time by Vaughn chronically driving her car when it was low on or out of oil. Finally, Barnhart opined that repairing the leak and correcting the oil levels could not have prevented the engine from throwing a rod.
 {¶ 14} On September 23, 2004, the jury returned a verdict in favor of Vaughn on both her CSPA and negligence claims. The jury awarded Vaughn $4,200 in damages for Pep Boys' violation of the CSPA and $500 for its negligence.
 {¶ 15} Less than a month after the verdict, the trial court conducted a hearing on Vaughn's motion for treble damages pursuant to R.C. 1345.09(B) and attorney fees pursuant to R.C.1345.09(F)(2). The trial court orally granted Vaughn's motion, but did not state any reasons for its decision.
 {¶ 16} On October 24, 2004, the trial court issued a judgment entry in which it reduced its oral ruling to judgment and awarded Vaughn $12,600 in damages, plus costs and interest at the rate of four percent per annum. Further, the trial court specified that the costs included $19,648.25 in attorney fees. The trial court later issued a nunc pro tunc judgment entry in which it also granted judgment in Vaughn's favor on her negligence claim and awarded her damages in the amount of $500.
 {¶ 17} Pep Boys now appeals and assigns the following errors:
[1.] THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES UNDER THE CONSUMER SALES PRACTICES ACT, R.C. § 1345.09, TO PLAINTIFF-APPELLEE.
[2.] THE TRIAL COURT ERRED IN AWARDING TREBLE DAMAGES UNDER THE CONSUMER SALES PRACTICES ACT, R.C. § 1345.09, TO PLAINTIFF-APPELLEE.
[3.] THE JURY ERRED IN FINDING THAT DEFENDANT-APPELLANT PEP BOYS VIOLATED THE CONSUMER SALES PRACTICES ACT, R.C. §§ 1345.01, ET SEQ.
[4.] THE JURY ERRED IN FINDING DEFENDANT-APPELLANT PEP BOYS NEGLIGENT.
[5.] THE JURY ERRED IN ITS COMPUTATION OF DAMAGES AWARDED TO PLAINTIFF-APPELLEE.
 {¶ 18} We will address Pep Boys' assignments of error out of order, beginning with its third assignment of error. By that assignment of error, Pep Boys argues that the evidence introduced at trial does not prove that it violated the CSPA. We disagree.
 {¶ 19} In reviewing the determination that Pep Boys committed a deceptive act that violated the CSPA, we are guided by the principle that judgments supported by competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81. If the evidence is susceptible to more than one interpretation, we must construe it consistently with the trial court's judgment.Cent. Motors Corp. v. Pepper Pike (1995), 73 Ohio St.3d 581, 584.
 {¶ 20} In the case at bar, the jury was instructed that it could find Pep Boys liable for a CSPA violation if it found that Pep Boys: (1) made a representation that the repair work Pep Boys did on Vaughn's car had sponsorship, approval, performance characteristics, accessories, uses, or benefits that it did not have; (2) made a representation that the repair work Pep Boys did on Vaughn's car was of a particular standard, quality, grade, style, prescription, or model, when it was not; (3) made a representation that the repair work Pep Boys did on Vaughn's car had been supplied in accordance with a previous representation, when it was not; (4) made a representation that repairs had been made or services had been performed, when they had not; (5) maintained a pattern of inefficiency and incompetence in repairing Vaughn's car; or (6) performed repairs on Vaughn's car in an unworkmanlike manner. Because the jury was only asked to reach a general verdict, it is unknown which ground, or grounds, the jury relied upon in finding that Pep Boys violated the CSPA. Therefore, if competent, credible evidence supports any of the above-listed grounds, this court cannot reverse the trial court's judgment on Vaughn's CSPA claim as being against the manifest weight of the evidence.
 {¶ 21} At trial, Nixon testified that, each time he took his aunt's car to Pep Boys for repairs, a Pep Boys' employee told him that the oil leak was fixed. The first such representation was indisputably wrong, as during the second visit to Pep Boys, Barnhart determined that the engine was still leaking oil. According to Betzler, Vaughn's expert witness, the second such representation was also wrong because the car was still leaking oil when he examined it in October 2003. Given this competent, credible evidence, the jury had a sufficient basis on which to conclude that Pep Boys made two representations that repairs had been made, when, in fact, they had not. Consequently, the trial court's judgment in favor of Vaughn on her CSPA claim was not against the manifest weight of the evidence.
 {¶ 22} Pep Boys, however, argues that the first representation that the leak had been fixed, when it had not, was not a violation of the CSPA because the oil leak diagnostic test is not 100 percent accurate. Although undisputed, this fact is irrelevant because it was never communicated to Nixon or Vaughn. Once Vaughn presented evidence that Pep Boys made unqualified representations that it had fixed the leak when, in fact, it had not fixed the leak, the jury had a sufficient evidentiary basis on which to conclude a violation of the CSPA occurred.
 {¶ 23} Second, Pep Boys argues that Betzler's testimony does not establish that Pep Boys failed to repair the oil leak during the car's second visit to Pep Boys. This argument is based upon Betzler's admission, made on cross-examination, that some of the oil he identified as "fresh" could have been on the underside of the car since mid-August 2003. Because the presence of the "fresh" oil supported Betzler's conclusion that the leak was ongoing, his subsequent admission arguably undercut his opinion that, within a reasonable degree of mechanical certainty, the oil leak still existed even after Barnhart worked on the car. However, it was within the jury's province to determine how much weight to give Betzler's opinion. Kokitka v. Ford Motor Co.
(1995), 73 Ohio St.3d 89, 92 ("[T]he jury alone, as the trier of fact, has the duty to decide what weight should be given to the testimony of any expert witness."); Pangle v. Joyce (1996),76 Ohio St.3d 389, 395 ("Once expert testimony was admitted, it was the jury's role to assess the experts' credibility and to assign weight to the experts' testimony and opinions."). As reflected by the jury's verdict, it relied upon Betzler's testimony, and we must afford this determination due deference.
 {¶ 24} Finally, Pep Boys argues that the evidence does not support a finding that it did anything to cause damage to the engine. However, Betzler opined that, within a reasonable degree of mechanical certainty, the damage to Vaughn's engine was proximately caused by Pep Boys' incompetence and inefficiency in repairing the oil leak. Although Barnhart testified differently, the jury was free to discount his testimony and, instead, accept Betzler's testimony.
 {¶ 25} Accordingly, because competent, credible evidence supports the trial court's judgment in favor of Vaughn on her CSPA claim, we overrule Pep Boys' third assignment of error.
 {¶ 26} By Pep Boys' fourth assignment of error, it argues that the evidence produced at trial does not prove that it was negligent. We disagree.
 {¶ 27} In order to establish actionable negligence, a plaintiff must show the existence of a duty, a breach of the duty, and an injury resulting proximately from the breach.Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142. If an automobile repair company agrees to provide repairs or services, it has a duty to perform the repairs and services using ordinary care and skill, and it is liable for any damages proximately caused by violating this duty. Landon v. Lee Motors, Inc.
(1954), 161 Ohio St. 82, 101.
 {¶ 28} In the case at bar, Betzler testified that Pep Boys did not follow proper procedure in conducting the second oil leak diagnostic test or in fixing the leak in the timing cover gasket. First, according to Betzler, standard industry practice requires that, before an oil leak diagnostic test is performed, a mechanic must clean off any oil on the outside of the engine so to better discern the presence of oil on the engine after the test drive. Betzler also testified that, during an oil leak diagnostic test, a mechanic must drive the car at expressway speeds in order to verify that oil will not leak out of the engine even under the increased internal pressure expressway driving causes. Second, Betzler maintained that standard industry practice, as reflected in the All Data manual and the manufacturer's recommendation, requires a mechanic to also replace the oil pan gasket when he replaces the timing cover gasket in a car driven over 80,000 miles. Betzler opined that Pep Boys' failure to follow these standard industry practices resulted in its failure to properly diagnose and fix the oil leak, which in turn, resulted in the destruction of Vaughn's engine.
 {¶ 29} Pep Boys does not dispute that its mechanics neither cleaned the engine, test drove Vaughn's car at expressway speed, nor replaced the oil pan gasket. However, Pep Boys argues that standard industry practice does not require it to perform any of these actions. To support this assertion, Pep Boys points to the testimony of Barnhart, who stated that he followed Pep Boys' standard policy and the Mitchell's manual, which do not require cleaning the engine, test driving at expressway speed, or replacing the oil pan gasket. That Barnhart offered a contrary opinion regarding the parameters of standard industry practices created a factual dispute for the jury to resolve. The jury chose to believe Betzler, and as we stated above, and we must defer to that determination.
 {¶ 30} Accordingly, we conclude that Vaughn presented competent, credible evidence, in the form of Betzler's testimony, that demonstrated that Pep Boys breached its duty to service and repair Vaughn's car with ordinary care and skill. Therefore, we overrule Pep Boys' fourth assignment of error.
 {¶ 31} By Pep Boys' first assignment of error, it argues that the trial court erred in awarding Vaughn attorney fees under R.C.1345.09(F). We disagree.
 {¶ 32} The decision to grant or deny attorney fees under R.C.1345.09(F) is discretionary. Einhorn v. Ford Motor Co. (1990),48 Ohio St.3d 27, 29. Thus, an appellate court will not disturb the trial court's decision to grant attorney fees absent an abuse of discretion. Boyle v. Daimler Chrysler Corp., Clark App. No. 2001-CA-81, 2002-Ohio-4199, at ¶ 108.
 {¶ 33} Pursuant to R.C. 1345.09(F), a trial court "may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if * * * (2) [t]he supplier has knowingly committed an act or practice that violates this chapter." A supplier acts "knowingly" if it intentionally commits a deceptive, unfair, or unconscionable act or practice that violates the CSPA. Einhorn, supra, at 30. Thus, a supplier can be liable for attorney fees even if it was not aware that its conduct violated the CSPA, as long as it intentionally engaged in the conduct. Id. See, also, Hahn v. Doe (Mar. 23, 1995), Franklin App. No. 94APE07-1024 (in order to satisfy the "knowing" conduct standard, the plaintiffs had to show that the defendant knew that the delivered product did not conform with its earlier representations).
 {¶ 34} In the case at bar, Pep Boys argues that the trial court erred by not making the predicate finding that Pep Boys "knowingly" committed a deceptive or unfair act before awarding attorney fees. Although the trial court awarded attorney fees under R.C. 1345.09(F), it never explicitly stated that Pep Boys' conduct was knowing. However, a trial court's failure to make an explicit finding of knowing conduct is not fatal to an award of attorney fees where the record supports a finding that the defendant acted knowingly, and a trial court implicitly makes such a finding. Howard v. Norman's Auto Sales, Franklin App. No. 02AP-1001, 2003-Ohio-2834, at ¶ 38, quoting Patterson v.Stockert (Dec. 13, 2000), Tuscarawas App. No. 2000AP 01 0002. By awarding attorney fees under R.C. 1345.09(F), the trial court implicitly found that Pep Boys acted knowingly. Thus, the resolution of Pep Boys' first argument under this assignment of error turns upon the resolution of its second argument — that the record is devoid of evidence supporting a finding of knowing conduct.
 {¶ 35} Pep Boys asserts that even if its mechanics did not properly locate and repair the oil leak, the evidence shows that none of the work the mechanics performed was intentionally sub par. Pep Boys' characterization of the state of the evidence on this point is correct, but this evidence only demonstrates that Pep Boys did not intentionally commit one of the six alleged CSPA violations, i.e., that Pep Boys performed the repairs in an unworkmanlike manner. We must now determine whether the evidence shows that Pep Boys knowingly committed a deceptive or unfair act or practice that violated the CSPA in any of the other five alleged ways.
 {¶ 36} Pep Boys does not dispute that its mechanics neither found nor fixed an oil leak the first time Vaughn took her car to Pep Boys. Indeed, the September 1, 2003 invoice and receipt state that an oil leak diagnostic test was performed and the oil changed, but they do not state that any oil leak was found or fixed. Thus, when Pep Boys told Nixon that it had fixed an oil leak in the oil filter, it knowingly misrepresented that repairs had been made, a violation of Ohio Adm. Code 109:4-3-05(D)(9). Additionally, Pep Boys does not dispute that the oil leak diagnostic test it performed twice on Vaughn's car was not completely accurate. Nixon, however, testified that Pep Boys never told him that it was possible that Pep Boys had not found the oil leak. Thus, by making unqualified statements that it had found the oil leak, even though it knew it possibly had not, Pep Boys intentionally misrepresented that the work it did on Vaughn's car was of a particular standard or quality, a violation of R.C. 1345.02(B)(2).
 {¶ 37} Based upon these two instances of knowing conduct that violated the CSPA, the trial court did not abuse its discretion in awarding attorney fees under R.C. 1345.09(F)(2). Accordingly, we overrule Pep Boys' first assignment of error.
 {¶ 38} By Pep Boys' second assignment of error, it argues that because it committed no conscious wrongdoing, the trial court erred in awarding Vaughn treble damages under R.C.1345.09(B). We disagree.
 {¶ 39} When an appellate court is presented with a question of law, such as the proper interpretation of a statute, the appropriate standard of review is de novo. BP Exploration Oil,Inc. v. Ohio Dept. of Commerce, Franklin App. No. 04AP-619,2005-Ohio-1533, at ¶ 10. As Pep Boys' argument requires this court to interpret R.C. 1345.09(B), we must apply the de novo standard.
 {¶ 40} In part, R.C. 1345.09 provides that:
For a violation of Chapter 1345 of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:
* * *
(B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection * * *, the consumer may rescind the transaction or recover * * * three times the amount of his actual damages * * *.
Pursuant to the unambiguous language of this statute, once a plaintiff has established the existence of a previously-adopted rule or a previously-decided, publicly-available decision and elected to recover treble damages, the plaintiff is "entitled to" treble damages. Consequently, after a plaintiff satisfies the predicate requirements, R.C. 1345.09 man-dates that a trial court award treble damages. Crow v. Fred Martin Motor Co., Summit App. No. 21128, 2003-Ohio-1293, at ¶ 35 (trial court's refusal to grant treble damages because the defendant's conduct was not sufficiently egregious was error where the plaintiff had satisfied the R.C. 1345.09[B] predicate requirements).
 {¶ 41} Pep Boys, however, argues that R.C. 1345.09 requires a plaintiff to also prove conscious wrongdoing before a trial court can award treble damages. Such an argument urges this court to construe R.C. 1345.09(B) to include words the General Assembly did not use. This we cannot do. Perrysburg Twp. v. City ofRossford, 103 Ohio St.3d 79, 2004-Ohio-4362, at ¶ 7 ("In interpreting statutes, `it is the duty of this court to give effect to the words used, not to delete words used or to insert words not used.'"); Lynch v. Gallia Cty. Bd. of Commrs.
(1997), 79 Ohio St.3d 251, 254 ("[A] reviewing court must not construe a statute so as to supply words that are omitted.").
 {¶ 42} Further, we reject Pep Boys' contention that this court has already adopted a conscious wrongdoing requirement inSaraf v. Maronda Homes, Inc., Franklin App. No. 02AP-461, 2002-Ohio-6741. In Saraf, we found that competent, credible evidence established that the defendant had committed an unconscionable act and, thus, had violated the CSPA. We then noted that treble damages were not available to the plaintiff because the plaintiff had not established one of the R.C.1345.09(B) predicate requirements, i.e., that a rule had previously declared or a court had previously determined the act at issue violated R.C. 1345.03. Id. at ¶ 69. Nowhere in this decision did we hold, or even suggest, an additional conscious wrongdoing requirement existed.
 {¶ 43} Accordingly, we conclude that R.C. 1345.09(B) did not require the trial court to find that Pep Boys was conscious of its wrongdoing before the trial court awarded treble damages, and thus, we overrule Pep Boys' second assignment of error.
 {¶ 44} By Pep Boys' fifth assignment of error, it argues that the evidence produced at trial establishes that Vaughn failed to mitigate her damages in two ways: (1) she did not replace her engine until February 2004, requiring her to "rent" her neighbor's car for approximately six months, and (2) she paid her neighbor, Mabel Beach, $1,200 for the use of her car after Beach initially refused payment. We disagree.
 {¶ 45} "The general rule is that an injured party has a duty to mitigate and may not recover for damages that could reasonably have been avoided." Chicago Title Ins. Co. v. Huntington Natl.Bank (1999), 87 Ohio St.3d 270, 276. Here, Vaughn presented competent, credible evidence that she could not have reasonably avoided the $1,200 cost of borrowing her neighbor's car. First, Vaughn testified that she did not get her car repaired in September 2003 because she could not afford to do so. She eventually charged the cost of the repair on her credit card in February 2004, an option she resisted until then because she knew she would have to carry a balance on her credit card and incur interest on the balance. Second, Vaughn paid Beach $50 a week for the use of her car to avoid the higher cost of renting a car from a car rental agency. Although Beach initially did not want to charge Vaughn, the jury could have concluded that Vaughn could not have reasonably avoided providing some minimal compensation to Beach.
 {¶ 46} Accordingly, we overrule Pep Boys' fifth assignment of error.
 {¶ 47} For the foregoing reasons, we overrule each of Pep Boys' assignments of error and affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
Bryant and Brown, JJ., concur.