OPINION
{¶ 1} Plaintiff-appellant, Roy Hanna, dba "AAA Roofing // AAA Blacktop Paving" ("plaintiff"), appeals from a judgment of the Franklin County Municipal Court in favor of defendants-appellees, Ron and Carol Groom ("defendants"). For the reasons that follow, we reverse the judgment of the trial court and remand the matter to that court.
 {¶ 2} Plaintiff is the owner of "AAA Roofing // AAA Blacktop 
Paving." In June 2005, after receiving an estimate from plaintiff's agent, defendants agreed to have a new asphalt driveway installed by plaintiff's company for $2,100. Under the terms of the *Page 2 
agreement, defendants agreed to pay 50 percent of the contract price before work began and to pay the remaining 50 percent upon completion of the work. After Mr. Groom paid $1,050 as required under the agreement, plaintiff began to demolish defendants' driveway.[1]
 {¶ 3} During demolition of defendants' old driveway, plaintiff or his agent allegedly hit the defendants' home several times, ran over landscaping ties, bent an outside water tap, damaged four panels of siding on the Grooms' home, and damaged a neighbor's fence.
 {¶ 4} After the new driveway was completed, plaintiff's representative presented Mr. Groom with a certificate of completion for Mr. Groom's signature. Mr. Groom signed the certificate but also entered a notation on the certificate indicating that he would not tender the last payment until damages to defendants' siding were repaired.
 {¶ 5} Plaintiff's agents thereafter attempted to repair defendants' damaged siding on several occasions. These attempted repairs, however, failed to meet defendants' satisfaction. Because plaintiff failed to satisfactorily remedy the damages to defendants' property that were caused by plaintiff or his agent, defendants continued to withhold final payment. *Page 3 
 {¶ 6} Plaintiff eventually filed a mechanic's lien against defendants' property. Later, alleging, among other things, breach of contract and fraud, plaintiff sued defendants in the Franklin County Municipal Court. With leave of court, defendants filed an amended counterclaim against plaintiff, wherein they alleged, among other things, that plaintiff breached his contract to defendants and violated the Ohio Consumer Sales Protection Act, R.C. 1305.01 et seq., and Chapter 109:4-3 of the Ohio Administrative Code ("Deceptive Acts or Practices in Connection with Consumer Transactions"). Defendants also sought a declaration that the mechanic's lien against their home was void. Defendants did not, however, assert a negligence counterclaim or other tort counterclaim against plaintiff.
 {¶ 7} After a bench trial, the trial court found in favor of defendants. Finding that defendants were entitled to treble damages in accordance with the Ohio Consumer Sales Practices Act, the trial court awarded $15,000, plus post-judgment interest in damages and $4,718.04 in attorney's fees and court costs. The trial court also vacated plaintiff's mechanic's lien against defendants' property.
 {¶ 8} From the trial court's judgment in favor of defendants, plaintiff now appeals and advances three errors for our consideration:
 I. It was error for the trial court to find that the parties agreed to modify the original payment terms of the contract thus relieving the Appellees of their duty to pay pursuant to the original contract terms.
 II. It was error for the trial court to find in favor of the Appellees on their counterclaim that Appellant violated the Consumer Sales Protection Act.
 III. It was error for the trial court to award treble damages and attorney's fees to the Appellees on their counterclaim. *Page 4 
 {¶ 9} Whether a contract exists is a question of law. Motorists Mut.Ins. Co. v. Columbus Fin., Inc., 168 Ohio App.3d 691, 2006-Ohio-5090, at ¶ 7, citing Zelina v. Hillyer, 165 Ohio App.3d 255, 2005-Ohio-5803, at ¶ 12, citing Telxon Corp. v. Smart Media of Delaware, Inc., Summit App. No. 22098, 2005-Ohio-4931, at ¶ 40, appeal not allowed (2006),108 Ohio St.3d 1473, 2006-Ohio-665, reconsideration denied (2006),109 Ohio St.3d 1408, 2006-Ohio-1703. Interpretation of contracts also is a question of law. St. Marys v. Auglaize Cty. Bd. of Commrs., 115 Ohio St.3d 387,2007-Ohio-5026, at ¶ 38, citing Nationwide Mut. Fire Ins. Co. v. GumanBros. Farm (1995), 73 Ohio St.3d 107, 108.
 {¶ 10} An appellate court reviews questions of law de novo. Long BeachAssn., Inc. v. Jones (1998), 82 Ohio St.3d 574, 576, citing Ohio BellTel. Co. v. Pub. Util. Comm. (1992), 64 Ohio St.3d 145, 147;Motorists Mut. Ins. Co., supra, at ¶ 7; see, also, St. Marys, at ¶ 38. "`[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision.'" Koehring v. Ohio Dept. of Rehab. Corr, Franklin App. No. 06AP-396, 2007-Ohio-2652, at ¶ 10, quoting BP CommunicationsAlaska, Inc. v. Cent. Collection Agency (2000), 136 Ohio App.3d 807,812, dismissed, appeal not allowed, 89 Ohio St.3d 1464, citing Hall v.Ft. Frye Loc. School Dist. Bd. of Edn. (1996), 111 Ohio App.3d 690, 694; see, also, Hicks v. Leffler (1997), 119 Ohio App.3d 424, 427 (stating that de novo review requires an appellate court to review a judgment independently).
 {¶ 11} By comparison, appellate review of a mixed question of law and fact requires an appellate court to accord due deference to a trial court's factual findings if the factual findings are supported by competent, credible evidence, and to independently *Page 5 
review whether a trial court properly applied the law to the facts of the case. State v. Stamper, Lawrence App. No. 05CA21, 2006-Ohio-722, at ¶ 12; State v. Angus, Ross App. No. 05CA2880, 2006-Ohio-4971, at ¶ 6.
 {¶ 12} Plaintiff's first assignment of error asserts that the trial court erred when it determined that the parties agreed to modify the payment terms of their contract, thereby relieving defendants of their duty to pay plaintiff according to the terms of the parties' original agreement. For the reasons set forth below, we sustain in part and overrule in part plaintiff's first assignment of error.
 {¶ 13} "`A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" Kostelnik v.Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, at ¶ 16, reconsideration denied, 96 Ohio St.3d 1489, 2002-Ohio-4478, quoting Perlmuter PrintingCo. v. Strome, Inc. (N.D.Ohio 1976), 436 F.Supp. 409, 414. See, also,Nilavar v. Osborn (1998), 127 Ohio App.3d 1, 11.
 {¶ 14} "`[B]reach,' as applied to contracts is defined as a failure without legal excuse to perform any promise which forms a whole or part of a contract, including the refusal of a party to recognize the existence of the contract or the doing of something inconsistent with its existence." Natl. City Bank of Cleveland v. Erskine Sons
(1953),158 Ohio St. 450, paragraph one of the syllabus. "[T]o prove a breach of contract, a plaintiff must establish the existence and terms of a contract, the plaintiff's performance of the contract, the defendant's breach of the contract, and damage or loss to the *Page 6 
plaintiff." Samadder v. DMF of Ohio, Inc., 154 Ohio App.3d 770,2003-Ohio-5340, at ¶ 27, citing Powell v. Grant Med. Ctr.,148 Ohio App.3d 1, 2002-Ohio-443, at ¶ 27.
 {¶ 15} "A breach of a portion of the terms of a contract does not discharge the obligations of the parties to the contract, unless performance of those terms is essential to the purpose of the agreement." Software Clearing House, Inc. v. Intrak, Inc. (1990),66 Ohio App.3d 163, 170, citing Kersh v. Montgomery Developmental Ctr.
(1987), 35 Ohio App.3d 61; Boehl v. Maidens (1956), 102 Ohio App. 211; see, also, Unifirst Corp. v. M J Welding Mach., Inc. (Sept. 27, 1996), Scioto App. No. 95CA2401.
 {¶ 16} Whether a material breach has occurred ordinarily is a question of fact for the fact-finder. Ahmed v. University Hospitals Health CareSystem, Inc., Cuyahoga App. No. 79016, 2002-Ohio-1823, at ¶ 41;Unifirst Corp., supra, citing Bradley v. Pentajay Homes (July 3, 1991), Athens App. No. CA 1458, citing Farnsworth, Contracts (1982) 612, Section 8.16); 6 Williston, Law of Contracts (3 Ed.1962) 297, Section 866. But, see, Luntz v. Stern (1939), 135 Ohio St. 225, 237 (stating that "[w]hen the facts presented in a case are undisputed, whether they constitute a performance or a breach of the contract, is a question of law for the court"); Gilbert v. Dept. of Justice (C.A.Fed, 2003),334 F.3d 1065, 1071-1072 (stating that "the determination of whether non-compliance with the terms of a contract is material, so as to constitute a breach, is a mixed question of fact and law. What was required by way of contract performance turns on contract interpretation, which is an issue of law").
 {¶ 17} Here, although the parties do not dispute some facts underlying the case, i.e., the parties entered into a contract for installation of a new driveway at defendants' home for the sum of $2,100; defendants tendered an initial payment of $1,050; *Page 7 
defendants failed to tender final payment after the paving job was completed; and plaintiff damaged defendants' siding during installation of the new driveway and subsequently attempted to repair this damage, the issue of whether plaintiff or defendants breached the paving contract is disputed by the parties.
 {¶ 18} Because in a civil case an appellate court is guided by the principle that judgments that are supported by competent, credible evidence going to all the material elements of a case must not be reversed as being against the manifest weight of the evidence, seePep Boys v. Vaughn, Franklin App. No. 04AP-1221, 2006-Ohio-698, at ¶ 19, citing C.E. Morris Co. v. Foley (1978), 54 Ohio St.2d 279, syllabus, our review therefore is limited to a determination of whether the trial court's finding that plaintiff failed to perform the paving contract in accordance with a "workmanlike" standard, thereby breaching the parties' contract, is supported by competent, credible evidence. See, also, Kosier v. DeRosa, 169 Ohio App.3d 150, 2006-Ohio-5114, at ¶ 33; C.F. Morris Co., at syllabus.
 {¶ 19} "The duty to perform in a workmanlike manner is imposed by common law upon builders and contractors." Barton v. Ellis (1986),34 Ohio App.3d 251, 252, citing Mitchem v. Johnson (1966), 7 Ohio St.2d 66;Velotta v. Leo Petronzio Landscaping, Inc. (1982), 69 Ohio St.2d 376. See, also, 3 Bruner O'Connor on Construction Law (2002), 635-646, Sections 9:67-9:70 (discussing contractor's implied warranty of workmanlike performance); Davis, The Illusive Warranty of Workmanlike Performance: Constructing a Conceptual Framework (1993), 72 Neb.L.Rev. 981. The implied duty of builders and contractors to perform their services in a workmanlike manner "`requires a construction professional to act reasonably and to exercise the degree of care which a member of the *Page 8 
construction trade in good standing in that community would exercise under the same or similar circumstances.'" Jarupan v. Hanna,173 Ohio App.3d 284, 2007-Ohio-5081, at ¶ 19, quoting Seff v. Davis, Franklin App. No. 03AP-159, 2003-Ohio-7029, at ¶ 19.
 {¶ 20} In Barton, this court explained:
 * * * Absent express or implied warranties as to the quality or fitness of work performed, the liability of a builder-vendor of a completed structure for failure to exercise reasonable care to perform in a workmanlike manner sounds in tort, and arises ex delicto. The essential allegation is that the builder-vendor's negligence proximately causes the vendee's damages. * * * By contrast, in the provision of future services, liability arises ex contractu as an implied bargain * * * provision, condition, or term of sale * * *
Id. at 253. (Citations omitted; emphasis sic.) See Kishmarton v. WilliamBailey Constr., Inc. (2001), 93 Ohio St.3d 226, paragraph one of the syllabus (holding that "[w]here the vendee and builder-vendor enter into an agreement for the future construction of a residence, the vendee's claim for breach of an implied duty to construct the house in a workmanlike manner arises ex contractu"); Jarupan, at ¶ 18, footnote 1.
 {¶ 21} Here, because the paving contract was for future services, plaintiff's implied duty to perform in a workmanlike manner arose ex contractu as an implied bargain, provision, condition, or term of sale.Barton, at 253. Also, because at trial plaintiff stipulated to the fact that he damaged defendants' siding while installing defendants' new driveway, some competent, credible evidence in the record supports the trial court's determination that plaintiff failed to perform in a workmanlike manner under the parties' contract when installing the defendants' driveway, thereby breaching the parties' contract. *Page 9 
 {¶ 22} Although the trial court concluded that plaintiff breached the parties' contract, the trial court did not, however, find that plaintiff's breach was total or material,[2] thereby excusing defendants' performance under the contract. By implication, therefore, we must conclude that the trial court found that plaintiff partially breached the parties' contract. See, generally, Hansel v. CreativeConcrete Masonry Constr. Co., 148 Ohio App.3d 53, 2002-Ohio-198, at ¶ 11, citing Kersh, at 62 (stating that "a breach of one of several terms in a contract does not discharge the obligations of the parties to the contract, unless performance of the term is essential to the purpose of the agreement, and default by a party who has substantially performed does not relieve the other party from performance"). Cf. General MotorsCorp. v. New A.C. Chevrolet, Inc. (C.A.3, 2001), 263 F.3d 296, 315, fn. 5 (stating that "[i]t is hornbook law that when one party to a contract commits a material breach, the non-breacher has the option of either continuing the contract and suing for partial breach, or terminating the agreement in its entirety"); 23 Williston on Contracts (4.Ed. 2002), 438-443, Section 63:3 (stating that material breach discharges a party from further performance).
 {¶ 23} At trial, plaintiff claimed that he cured his defective performance by sufficiently repairing defendants' damaged siding. Defendants claimed, however, that plaintiff's cure was substandard and they put forth evidence that challenged plaintiff's claim that he sufficiently cured his defective performance. Finding in favor of defendants, *Page 10 
the trial court concluded that plaintiff failed to exercise skill and care with regard to his attempted repairs of defendants' siding. After reviewing the evidence in the record, we find that the trial court's determination that plaintiff failed to exercise skill and care in his attempted repairs is supported by some competent, credible evidence.
 {¶ 24} "When a builder or contractor breaches its implied duty to perform in a workmanlike manner, the cost of repair is the proper measure of damages." Jarupan, supra, at ¶ 19, citing McKinley v. BrandtConstr., Inc., 168 Ohio App.3d 214, 2006-Ohio-3290, at ¶ 10; McCrary v.Clinton Cty. Home Improvement (1998), 125 Ohio App.3d 521, 523. "`[T]he repair of deficient work may involve both additional activities necessitated by the deficient work, and activities previously omitted, but necessary, to proper performance in a workmanlike manner.'"Jarupan, at ¶ 19, quoting Barton, at 254. Cf. Hansel, at ¶ 26.
 {¶ 25} At trial, defendants proffered evidence that established that defendants' expected cost to repair their damaged siding exceeded the sum of defendants' remaining performance under the parties' contract. We therefore cannot agree with plaintiff's contention that the trial court erred when it concluded that defendants were not required to pay the remaining amount of $1,050 under the parties' contract. Accordingly, plaintiff's contention is not well-taken.
 {¶ 26} Besides concluding that plaintiff partially breached the paving contract, the trial court also concluded that the parties modified the paving contract when Mr. Groom noted on the certificate of completion that he was withholding final payment until defendants' siding was repaired. For the following reasons, however, we disagree with the trial court's conclusion that the parties modified the paving contract. *Page 11 
 {¶ 27} A contract cannot be unilaterally modified, and parties to a contract must mutually consent to a modification. Nagle Heating AirConditioning Co. v. Heskett (1990), 66 Ohio App.3d 547, 550; see, also,Hanly v. Riverside Methodist Hosp. (1991), 78 Ohio App.3d 73, 79, citingFrengel v. Ports Petroleum Co. (Sept. 11, 1987), Trumbull App. No. 3790 (stating that "[a] party to an existing contract may modify that contract only with the assent of the other party to the contract").
 {¶ 28} In Citizens Fed. Bank, F.S.B. v. Brickler (1996),114 Ohio App.3d 401, agreeing with the proposition "that `subsequent acts and agreements may modify the terms of a contract, and, unless otherwise specified, neither consideration nor a writing is necessary, '" id. at 407, the Second District Court of Appeals stated:
 We agree with the trial court's conclusion that "subsequent acts and agreements may modify the terms of a contract, and, unless otherwise specified, neither consideration nor a writing is necessary." Software Clearing House, Inc. v. Intrak, Inc. (1990), 66 Ohio App.3d 163, 172, 583
N.E.2d 1056, 1061. "There is no doubt that it was perfectly competent for the defendant to assent to any modification or change in the terms of the contract, and that such assent, either express or implied, if acted on by the plaintiffs, would be binding upon the defendant." Mehurin Son v. Stone (1881), 37 Ohio St. 49, 57-58. "[I]t appears to be equally well settled, that, subsequent to the execution of a written contract, it is competent for the parties, by a new contract, although not in writing, either to abandon, waive, or annul, the prior contract, or vary, or qualify the terms of it, in any manner. * * * But where a written contract is thus either totally abandoned and annulled, or simply altered or modified in some of its terms, it is done, and can only be done, by a distinct and substantive contract between the parties, founded on some valid consideration." (Emphasis sic.) Thurston v. Ludwig (1856), 6 Ohio St. 1, 5.
Id. at 407-408. See, also, Thurston v. Ludwig (1856), 6 Ohio St. 1, at syllabus (holding that "[a] verbal agreement to be effectual as awaiver, variation, or change in the *Page 12 
stipulations of a prior written contract between the parties, must rest upon some new and distinct legal consideration, or must have been so far executed or acted upon by the parties, that a refusal to carry it out would operate as a fraud upon one of the parties." (Emphasis sic);Bischsel v. Laughlin (Sept. 27, 1995), Tuscarawas App. No. 95 AP 030010 (finding that Thurston is still the law of Ohio); Heriott v. Marine
(1953), 96 Ohio App. 174, 177 (relying on Thurston); First Natl. Bank ofOhio v. Cassell (March 29, 1995), Summit App. No. 16823 (relying onThurston).
 {¶ 29} Here, according to terms of the paving contract, defendants had already promised to pay $1,050 to plaintiff following completion of the new driveway. Thus, even assuming that the parties mutually agreed to modify the paving contract, defendants' promise to pay $1,050 in exchange for repairs to the siding cannot be a bargained-for detriment, thereby constituting valid consideration to support the parties' purported modification of their contract. See, generally, Carlisle v. T R Excavating, Inc. (1997), 123 Ohio App.3d 277, 285 (observing that " * * * past consideration cannot be a bargained-for benefit or detriment, since it has already occurred or accrued); Bogley's Estate v. U.S.
(Ct.Cl., 1975), 514 F.2d 1027, 1033 (stating that "[i]t is * * * fundamental that a contract must be supported by sufficient and valuable consideration, which has been defined as: * * * [A] detriment incurred by the promisee, or a benefit received by the promisor at the request of the promisor. * * * The general rule almost universally followed is that past consideration is no consideration. * * * Also a promise to do what one is required by law or contract to do is not a valuable consideration").
 {¶ 30} Consequently, even assuming arguendo that the parties mutually consented to modification of the paving contract, because defendants' purported promise *Page 13 
to pay $1,050 in exchange for repairs to the siding fails as valid consideration, we conclude that the trial court erred, as a matter of law, when it determined that the parties modified the payment terms of the paving contract. Accordingly, we sustain in part plaintiff's first assignment of error. However, because the trial court did not err when it concluded that defendants were not required to pay the remaining amount of $1,050 under the parties' contract, we overrule in part plaintiff's first assignment of error.
 {¶ 31} Plaintiff's second and third assignments of error concern the trial court's determination that plaintiff violated the Ohio Consumer Sales Practices Act, R.C Chapter 1345 ("CSPA"), and the trial court's award of treble damages and attorney's fees to defendants. Because these assignments of error are interrelated, we shall jointly consider them.
 {¶ 32} The Ohio Consumer Sales Practices Act, R.C. Chapter 1345, has been found to apply to a dispute between homeowners and a sole proprietor of a construction company who performed improvements to the homeowners' property, including replacement of the homeowners' driveway.Williams v. Edwards (1998), 129 Ohio App.3d 116, 120-123; see, also,Myers v. Curt Bullock Builders (Sept. 4, 1991), Summit App. No. 14994 (applying CSPA to installation of garage and driveway). See, generally, former R.C. 1345.01(A) (defining "consumer transaction" as, among other things, "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things");[3] R.C.1345.01(C) *Page 14 
(defining "supplier" as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not he deals directly with the consumer."); and R.C. 1345.01(D) (defining "consumer" as "a person who engages in a consumer transaction with a supplier").
 {¶ 33} "The Consumer Sales Practices Act, R.C. Chapter 1345, prohibits suppliers from committing either unfair or deceptive consumer sales practices or unconscionable acts or practices as catalogued in R.C.1345.02 and 1345.03. In general, the CSPA defines `unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while `unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." Johnson v. MicrosoftCorp., 106 Ohio St.3d 278, 2005-Ohio-4985, at ¶ 24. (Footnote omitted.) See, also, Bungard v. Ohio Dept. of Job Family Servs., Franklin App. No. 07AP-447, 2007-Ohio-6280, at ¶ 11 (describing CSPA and its purpose).
 {¶ 34} "Ohio's Consumer Sales Practices Act is a remedial law designed to provide various civil remedies to aggrieved consumers and must be liberally construed pursuant to R.C. 1.11." State ex rel. Celebrezze v.Hughes (1991), 58 Ohio St.3d 273, 275, citing Einhorn v. Ford MotorCo. (1990), 48 Ohio St.3d 27; Celebrezze v. Hughes (1985),18 Ohio St.3d 71. (Emphasis sic.)
 {¶ 35} "A consumer may, in an individual action, rescind the transaction or recover damages for a violation of the CSPA." Marrone v.Phillip Morris USA, Inc., 110 Ohio St.3d 5, 2006-Ohio-2869, at ¶ 1, citing former R.C. 1345.09(A). "However, if the violation is an act or practice that was declared to be deceptive or unconscionable by a *Page 15 
rule adopted by the Attorney General before the consumer transaction on which the action is based, or if the violation is an act or practice that was determined by a court to violate the CSPA and the court's decision was available for public inspection in accordance with R.C.1345.05(A)(3) before the consumer transaction, the consumer may seek additional relief, including damages or other appropriate relief in a class action under Civ.R. 23. R.C. 1345.09(B)." Marrone, at ¶ 1.
 {¶ 36} "[T]o recover under R.C. 1345.03, a consumer must show that a supplier acted unconscionably and knowingly." Suttle v. DeCesare, Cuyahoga App. No. 81441, 2003-Ohio-2866, at ¶ 53, appeal not allowed,100 Ohio St.3d 1425, 2003-Ohio-5232, citing Karst v. Goldberg (1993),88 Ohio App.3d 413, 418. "While proof of intent is not required to prove deception under R.C. 1345.02, proof of knowledge is a requirement to prove an unconscionable act under R.C. 1345.03." Suttle, at ¶ 53, citingKarst, at 418. "`Knowledge,' under R.C. 1345.01(E), `means actual awareness, but such actual awareness may be inferred where objective manifestations indicate that the individual involved acted with such awareness.'" Suttle, at ¶ 53.
 {¶ 37} When reviewing the trial court's determination that plaintiff violated former R.C. 1345.02 and 1345.03, "we are guided by the principle that judgments supported by competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence." Pep Boys, at ¶ 19, citingC.E. Morris Co., at syllabus; see, also, Seasons Coal v. Cleveland
(1984), 10 Ohio St.3d 77, 80 (stating that "an appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge"). "If the evidence is susceptible *Page 16 
to more than one interpretation, we must construe it consistently with the trial court's judgment." Pep Boys, at ¶ 19, citing Cent. MotorsCorp. v. Pepper Pike (1995), 73 Ohio St.3d 581, 584, reconsideration denied, 74 Ohio St.3d 1423.
 {¶ 38} To support its conclusion that plaintiff violated R.C. 1345.02
and 1345.03, the trial court found, among other things, that "Defendants established for this Court that Plaintiff's Company was hired based in part upon an advertisement that claimed that Plaintiff's Company was bonded" and "Defendant [sic] would not have considered Plaintiff's Company, had such bonding not been present." (Findings of Fact and Conclusions of Law, at 49.)[4] The trial court further stated: "This Court further notes that during the trial Plaintiff failed to submit any evidence to establish that Plaintiff's Company was bonded at the time that Defendants hired said Company to complete the paving project.Plaintiff further failed to submit any evidence that Plaintiff informed Defendants that no such bond existed, either at the time that Defendants contracted Plaintiff's company or any time thereafter." Id. (Emphasis added.)
 {¶ 39} "The party bearing the responsibility for the burden of proof is, as a general rule, determined by the pleadings. It is firmly established that he who affirms must prove." Schaffer v. Donegan (1990),66 Ohio App.3d 528, 534, jurisdictional motion overruled by,55 Ohio St.3d 722, citing Martin v. Columbus (1920), 101 Ohio St. 1; Shaker Med.Ctr Hosp. v. Blue Cross of N.E. Ohio (1962), 115 Ohio App. 497. See, also, Winston v. Jake Sweeney Automotive, Inc. (Dec. 2, 1992), Hamilton App. No. C-910868, dismissed, jurisdictional motion overruled by,66 Ohio St.3d 1456, rehearing denied, 66 Ohio St.3d 1490, citingCharles A. Burton, Inc. v. Durkee (1954), 162 Ohio St. 433, andSchaffer, *Page 17 
supra (stating that "[i]t is well established in Ohio that the plaintiff in a civil action bears the burden of proof on each essential element of any claim for relief set forth in the complaint").
 {¶ 40} Because, in support of their CSPA claim, defendants claimed plaintiff's misrepresentation about whether he was bonded or insured deceptively induced defendants to enter an agreement for the paving of defendants' driveway, the burden was on defendants, not plaintiff, to proffer evidence in support of their claim of deceptive inducement based on plaintiff's lack of bonding or insurance.
 {¶ 41} Absent from the record, however, is any evidence regarding whether plaintiff or his company was or was not bonded or whether plaintiff did or did not have insurance. See, generally, Van Jackson v.Check `N Go of Illinois, Inc. (N.D.Ill, 2000), 193 F.R.D. 544, 546
(observing that "undeveloped arguments are waived and bald assertions are worthless"). Because defendants failed to proffer any evidence as to whether plaintiff or plaintiff's company was or was not bonded or insured, defendants consequently proffered no evidence that plaintiff lacked bonding or insurance. Plaintiff therefore was under no duty to rebut defendants' claims about bonding or insurance.
 {¶ 42} Similarly, although defendants proffered testimony that plaintiff represented to them that he owned a siding company, and such a representation induced Mr. Groom to permit plaintiff to attempt to repair the damaged siding, defendants proffered no evidence to support defendants' contention that plaintiff's representation about owning a siding company was misleading or false. (Tr. 149-150.) Despite defendants' failure to put forth any evidence about whether plaintiff owned a siding company, the trial court placed the burden upon plaintiff to rebut defendants' claims when it stated: "This Court also notes *Page 18 
that Plaintiff failed to submit any evidence to establish thatPlaintiff actually owned a siding company or that Plaintiff had any experience with the same." (Findings of Fact and Conclusions of Law, at 48-49.) (Emphasis added.)
 {¶ 43} Accordingly, we agree with plaintiff's contention that the trial court improperly shifted the burden to plaintiff to establish whether plaintiff's company was bonded or whether plaintiff owned a siding company. We also must therefore conclude that the trial court's judgment is not supported by competent, credible evidence going to all the material elements of defendants' CSPA claim, and we further conclude that the trial court erred by awarding treble damages and attorney's fees under the CSPA.
 {¶ 44} For reasons set forth above, we therefore sustain plaintiff's second and third assignments of error.
 {¶ 45} Accordingly, having sustained in part and overruled in part plaintiff's first assignment of error, and having sustained plaintiff's second and third assignments of error, we reverse the judgment of the Franklin County Municipal Court. Because the evidence in the record supports a finding that defendants' expected cost of repairing their damaged siding exceeds the sum of defendants' remaining performance under the parties' contract, we remand the matter to the trial court for proceedings in accordance with law and consistent with this opinion to recalculate defendants' damages for the damaged siding.
Judgment reversed; cause remanded with instructions.
KLATT and SADLER, JJ., concur.
[1] Although plaintiff's agent offered defendants a written estimate for the installation of a new driveway, which provided that installation would begin within 30 days of defendants' acceptance of plaintiff's proposal, defendants did not accept plaintiff's offer in writing. Rather, after receiving the written estimate, Mr. Groom tendered $1,050 to plaintiff as required by plaintiff's offer. (Plaintiff's Exhibit No. 2.) (Tr. 135-136.) Plaintiff, however, failed to begin the job within 30 days of acceptance as stated in the written estimate. (Tr. 139.) After plaintiff failed to timely perform, plaintiff offered to refund Mr. Groom's payment of $1,050. Mr. Groom, however, declined plaintiff's refund offer and orally informed plaintiff that he "wanted my driveway." (Tr. 142.) Thereupon, the parties rescheduled the job, id., and plaintiff eventually began to demolish defendants' driveway. On appeal, the parties do not dispute that a contract was formed between them wherein plaintiff agreed to install a new driveway at defendants' home for the sum of $2,100.
[2] "[T]o determine if an alleged breach was material, the factfinder must consider all of the circumstances of the particular case, including the conduct and relationship of the parties." Unifirst Corp. v. M JWelding Mach., Inc., supra, citing Todd v. Heekin (S.D.Ohio 1982),95 F.R.D. 184, 186; 2 Restatement of the Law 2d, Contracts (1981) 237, Section 241. "[T]he determination of materiality is often a complicated question of fact that must be resolved with reference to the parties' intentions as evidenced by the circumstances of the transaction."Unifirst Corp., supra, citing Sahadi v. Continental Illinois Natl. Bank Trust Co. (C.A.7, 1983), 706 F.2d 193, 196-197. See, also, Wagner v.Flo-lizer, Inc. (Apr. 21, 1988), Pike App. No. 407; Kersh, supra, at 62-63 (discussing five factors to be considered in deciding whether a failure to render performance is material under Restatement of the Law 2d, Contracts [1981] 237, Section 241).
[3] After defendants contracted with plaintiff for a new driveway in exchange for $2,100, but before the trial court issued its judgment, R.C. 1345.01 was amended. See (2006) Am. Sub. S.B. No. 185, effective January 7, 2007.
[4] At trial, Mr. Groom testified that his review of plaintiffs advertisement led him to conclude that plaintiff was insured, not bonded. (Tr. 82-83.) *Page 1