[Cite as *Elevation Ents., Ltd. v. NMRD, Ltd.*, 2023-Ohio-4433.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Elevation Enterprises Limited, | : | |
| Plaintiff-Appellant, | : | No. 22AP-105 (C.P.C. No. 19CV-0274) |
| v. | : | (REGULAR CALENDAR) |
| NMRD Limited, et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 7, 2023

**On brief:** *Sikora Law LLC, Michael J. Sikora III*, and *George H. Carr* for Elevation Enterprises Limited. **Argued:** *George H. Carr.*

**On brief:** *Brennan Manna & Diamond, LLC, Hayley E. Kick*, and *David M. Scott* for NMRD Limited Ltd. **Argued:** *David M. Scott.*

**On brief:** *Kevin E. Humphreys* for Sheila D. Trautner **Argued:** *Kevin E. Humphreys.*

APPEAL from the Franklin County Court of Common Pleas

MENTEL, J.

{¶ 1} Plaintiff-appellant, Elevation Enterprises Limited ("Elevation"), appeals from a January 20, 2022 judgment entry finding in favor of Elevation against defendant-appellee, NMRD Limited. ("NMRD"), for breach of a listing agreement in the amount of $102,999.56. The trial court awarded $30,899.87 of said funds directly to Sheila D. Trautner ("Trautner"). For the reasons that follow, we reverse.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  This case concerns a dispute over a brokerage commission originating out of a real estate listing agreement.

{¶ 3}  On March 15, 2017, Elevation, a commercial realty firm, and NMRD, a limited company that is the owner of real property located at 1690 Morse Road, Columbus Ohio ("Premises"), entered into an exclusive authorization to lease agreement ("listing agreement").  Per the terms of the listing agreement, Elevation was given exclusive authorization to offer the Premises for lease.  The listing agreement provided that if Elevation leased the Premises without cooperation from an outside broker, it was entitled to the following:

> [C]ommission shall be five percent (5%) of the total net leasehold payments for the first five years of the initial Lease term and four percent (4%) for the remaining period of the initial lease term. Net leasehold payments being the total of all lease payments for the leasehold term executed between [NMRD] and such Lessee, 1/2 payable to [Elevation] upon execution of said leasehold, 1/2 payable upon lease commencement.

(Feb. 7, 2019 Am. Compl., Ex. B, Exclusive Authorization To Lease Agreement at 1.)

{¶ 4}  The listing agreement went on to state that Elevation had the exclusive right to advertise the Premises for lease, and that it may make diligent efforts to lease the Premises in such a manner it deems advisable.  Relevant to the instant case, the agreement also provided that the "[c]ommission shall not be paid for amortized improvements." *Id.*

{¶ 5}  Elevation ultimately procured HomeBuys LLC ("HomeBuys") as a lessee for the Premises.  While the lease was negotiated, Trautner was employed by Elevation as a real estate salesperson.  Trautner was involved in securing HomeBuys as a lessee for the Premises.  In August 2018, it was discovered that HomeBuys' intended use of the Premises included the sale of alcohol, which would violate a prior use restriction imposed by non-party, The Kroger Company ("Kroger").  It is undisputed that Kroger agreed to a partial release of the restriction in exchange for $100,000.  On September 14, 2018, HomeBuys and NMRD entered into a final lease agreement ("lease agreement") of the Premises.  The lease agreement provided for an initial term of ten years—a base rent of $321,484.80 for years one through five then $352,879.80 for years six through ten.  Per section 10.5 of the

lease agreement, NMRD agreed to pay HomeBuys no more than $458,952 for tenant improvements at the Premises.

{¶ 6} On November 1, 2018, Elevation issued its commission invoice in connection with the lease agreement to NMRD. The parties disputed whether Elevation had agreed to reduce its commission by $25,000 as contribution to the $100,000 payment to Kroger for waiver of the use restriction. A dispute would later arise concerning whether section 10.5 of the lease agreement constituted an amortized improvement, thereby removing it from the calculation of the commission. NMRD conceded that it refused to pay any portion of Elevation's commission during this period. On December 17, 2018, Elevation recorded a broker's lien against the Premises. On or about this same time, Elevation dissociated Trautner from the brokerage.

{¶ 7} On January 11, 2019, Elevation filed a complaint alleging causes of action for various forms of breach of contract, unjust enrichment, and foreclosure of commercial broker lien seeking damages and/or foreclosure of its statutory lien. An amended complaint was filed on February 7, 2019. Elevation alleged that it was entitled to $150,947 in commission plus attorney fees, costs as provided in R.C. 1311.88(C), and any other relief that the trial court deems just or appropriate.

{¶ 8} On February 21, 2019, NMRD filed an answer and counterclaim seeking declaratory judgment from the court as to the amortization and contract modification issues. On February 22, 2019, Elevation moved that NMRD deposit funds in escrow representing the commission that was due to Elevation under the listing agreement, which the trial court granted on March 18, 2019. The trial court granted a subsequent agreed motion to adjust the amount of NMRD's funds to be deposited and held in escrow on September 17, 2019. The additional deposit held in escrow was provided by NMRD to the clerk of courts on September 27, 2019.[1] The total deposit of $211,500 signified one and one-half times the amount claimed due in Elevation's affidavit for a commercial broker's lien recorded with the Franklin County Recorder's Office per Instrument No.

---

[1] The initial complaint and amended complaint named WesBanco Bank, Inc., HomeBuys, and Franklin County Treasurer as defendants as they may claim an interest in the Premises. On September 9, 2020, Elevation dismissed without prejudice all claims against WesBanco Bank, Inc. and HomeBuys pursuant to Civ.R. 41(A)(1)(b).

201812170170298. The trial court, guided by R.C. 1311.92, ordered the release of the broker's lien on September 27, 2019. (Jan. 20, 2022 Findings & Jgmt. Entry.)

{¶ 9} On May 27, 2021, Elevation moved for summary judgment. Elevation argued that there was no dispute of fact that a contract was in place between the parties, and NMRD had refused to pay on the commission in connection with the lease agreement. Elevation also argued that as a matter of law the tenant improvement allowance in the lease agreement was not an amortized improvement. Finally, Elevation argued that there was no dispute of material fact that it did not verbally agree to reduce its commission by $25,000 of its commission as part of the $100,000 payment to Kroger for waiver of the use restriction on the Premises. Alternatively, Elevation contended that as a matter of law the alleged oral modification was not valid as there was no new and distinct consideration. On June 24, 2021, NMRD filed a memorandum in opposition contending that there was a genuine issue of material fact as to the amortized improvements and alleged contract modification, which warranted the denial of Elevation's motion for summary judgment. A reply brief was filed on August 18, 2021.

{¶ 10} On June 9, 2021, Trautner filed a motion for leave to intervene in the case or be joined as a defendant instanter. Trautner alleged that based on her work as salesperson involved in the procurement of HomeBuys as a lessee, she was entitled to a percentage of Elevation's commission. Trautner never filed a claim against Elevation but asserted that she had an interest in the funds held in escrow. On September 3, 2021, the trial court granted the motion, over Elevation's objection, finding that pursuant to Civ.R. 24(A), intervention was appropriate.

{¶ 11} On October 6, 2021, the trial court granted partial summary judgment in favor of Elevation finding there was no genuine issue of material fact that a contract was in place between Elevation and NMRD. The trial court concluded that there was no dispute that Elevation performed the work as stated in the listing agreement, and NMRD was in breach of the agreement when it failed to pay any portion of the commission. The trial court also found there was no reasonable dispute of fact that the commission should not be paid on the tenant improvement allowance. The trial court, however, found there was a dispute of material fact as to whether Elevation agreed to a reduction in the commission in the

amount of $25,000. The trial court set the matter for trial on the sole issue of damages and attorney fees under R.C. 1311.88.

{¶ 12} A bench trial in this matter commenced on November 22, 2021. Prior to the start of trial, Elevation filed a notice of dismissal, pursuant to Civ.R. 41(A), to remove Trautner from the proceedings. The trial court, over the objection of Elevation, permitted Trautner to participate in the trial based on her interest in the commission funds held in escrow. The parties filed closing briefs on December 7, 2021.

{¶ 13} On January 20, 2022, the trial court issued a final judgment entry in this case. The trial court concluded that the tenant improvement allowance in the lease agreement constituted amortized improvements, which it held should be excluded from the calculation of Elevation's commission under the listing agreement. (Jan. 20, 2022 Findings & Jgmt. Entry at ¶ 11.) The trial court also found that based on the testimony at trial, Elevation agreed to a $25,000 reduction in its commission. Finally, the trial court held, "Elevation agreed to split any commission it received with its licensed real estate salesperson, Sheila Trautner. According to their agreement, Ms. Trautner was to receive thirty (30%) of the commission and Elevation seventy percent (70%)." *Id.* at ¶ 13.

{¶ 14} The trial court entered judgment in favor of Elevation and against NMRD for breach of the listing agreement and awarded Elevation $102,999.56. However, the trial court awarded $30,899.87 of said funds directly to Trautner. The trial court denied Elevation's request for attorney fees explaining that, in addition to the lack of a fee shifting provision in the listing agreement or evidence that the parties acted in bad faith, there was no statutory basis under R.C. 1311.88 for such an award. The trial court wrote, "Elevation's broker lien enforcement claim was extinguished upon the payment of the deposit to the clerk of courts. Thus, any right to attorney fees under R.C. 1311.88 was also extinguished." *Id.* at ¶ 17. The trial court's decision was silent as to any determination regarding prejudgment interest.

{¶ 15} Elevation filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 16} Elevation assigns the following as trial court error:

> [I.] The Trial Court erred by declaring that the Listing Agreement between Elevation and NMRD was verbally

amended, because NMRD provided no "new and distinct" consideration for such an amendment.

[II.] The Trial Court erred by subtracting the "Tenant Improvement Allowance" in the HomeBuys Lease from the total amount on which Elevation's commission was due, because the Listing Agreement only permitted subtraction of "amortized improvements," and the HomeBuys "Tenant Improvement Allowance" was not amortized.

[III.] The Trial Court erred by awarding a portion of Elevation's commission directly to non-party Sheila Trautner, despite her failure to assert any such claim against Elevation or NMRD, her voluntary dismissal before trial, and the statutory prohibition against such awards in R.C. § 4735.21.

[IV.] The Trial Court erred by failing to include pre-judgment interest in Elevation's final award, in violation of R.C. §§ 1343.03(A) and 1311.88.

[V.] The Trial Court erred by failing to include attorneys' fees in Elevation's final award, in violation of R.C. § 1311.88.

## III. LEGAL ANALYSIS

### A. Appellant's First Assignment of Error

{¶ 17} In Elevation's first assignment of error, it alleges that the trial court erred by determining that the listing agreement between Elevation and NMRD was verbally amended. Elevation contends, as a matter of law, the written contract could not be orally modified as there was no new and distinct consideration.

{¶ 18} In civil appeals from a bench trial, we generally review assignments of error under a manifest weight of the evidence standard. *3637 Green Rd. Co. v. Specialized Component Sales Co.*, 8th Dist. No. 103599, 2016-Ohio-5324, ¶ 19, citing *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 79-80 (1984). In such cases, we operate under the presumption that the trial court's findings are correct. *Id.* " 'A reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use their observations in weighing credibility of the proffered testimony.' " *Daily Servs., LLC v. Transglobal, Inc.*, 10th Dist. No. 22AP-656, 2023-Ohio-2462, ¶ 48, quoting *Phu Ta v. Chaudhry*, 10th Dist. No. 15AP-867, 2016-Ohio-4944, ¶ 17-18. Unless the

judgment lacks some competent, credible evidence that goes towards the material elements of the case, we will not reverse under a manifest weight of the evidence review. *3637 Green Rd. Co.* at ¶ 19, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, (1978), syllabus.

{¶ 19} However, the question of the existence of a contract presents a mixed question of law and fact. *Daily Servs., LLC* at ¶ 48. A reviewing court will accept the facts as determined by the trial court if based on some competent, credible evidence but resolve application of the law to the facts de novo. While the question of whether the parties intend to be bound is a question of fact, reviewed for whether they are supported by some competent, credible evidence, questions of law concerning the existence and interpretation of a contract are reviewed de novo. *Phu Ta* at ¶ 18, citing *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson Inc.*, 74 Ohio St.3d 501, 502 (1995); *Nexus Communication, Inc. v. Qwest Communication, Corp.*, 193 Ohio App.3d 599, 2011-Ohio-1759 (10th Dist.); *see also Greenzalis v. Nationwide Mut. Ins. Co.*, 10th Dist. No. 16AP-139, 2016-Ohio-8344, ¶ 23, citing *Hanna v. Groom*, 10th Dist. No. 07AP-502, 2008-Ohio-765, ¶ 14, 16 (finding the question of whether a contract exists and interpretation of that contract is a question of law). Whether an oral modification to a written agreement is based on new and distinct consideration is a question of law, which we review de novo. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 909-10 (6th Cir.2006). "De novo" review means the court of appeals provides an independent review of the record and affords no deference to the trial court's decision. *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 5.

{¶ 20} A contract is " '[a] promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty.' " *Daily Servs., LLC* at ¶ 44, quoting *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991). Formation of a contract requires an offer, acceptance, consideration, and mutual assent of the parties with legal capacity. *Daily Servs., LLC* at ¶ 44, citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, citing *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). Parties may vary or modify the terms of initial agreement in any manner. *Cor-Ben Consultants, Inc. v.*

*Cor-Ben Consultants Agency, Inc.*, Franklin C.P. No. 14 CV 005197, ¶ 14-15 (Sept. 3, 2015). However, a contract cannot be unilaterally modified by a party as any modification must be mutually agreed upon by the contracted parties. *Bluemile, Inc. v. Atlas Indus. Contrs., Ltd.*, 10th Dist. No. 16AP-789, 2017-Ohio-9196, ¶ 14, citing *Hanna* at ¶ 27. Where a written contract is altered or modified by oral agreement, new and distinct consideration is required, or "it must be a valid and binding contract itself, resting upon some new and distinct consideration." *Wells Fargo Bank, N.A. v. Baldwin*, 12th Dist. No. CA2011-12-227, 2012-Ohio-3424, ¶ 14, citing *Thurston v. Ludwig*, 6 Ohio St. 1 (1856), at syllabus; *Hanna* at ¶ 28.

**{¶ 21}** Consideration is defined as a bargained for legal benefit and/or detriment. *Marchbanks v. Ice House Ventures*, __Ohio St.3d__, 2023-Ohio-1866, ¶ 13, citing *Kostelnik* at ¶ 16. " 'Absent fraud or unconscionability, the adequacy of consideration is not a proper subject for judicial scrutiny.' " *Gatling Ohio, LLC v. Allegheny Energy Supply Co., LLC*, 10th Dist. No. 17AP-188, 2018-Ohio-3636, ¶ 20, quoting *Apfel v. Prudential-Bache Sec., Inc.*, 81 N.Y.2d 470, 476 (1993). Even in cases where the exchange is grossly unequal or of uncertain value, it may constitute valid consideration. *Id.*

**{¶ 22}** Here, Elevation entered into the March 15, 2017 listing agreement with NMRD for the exclusive right to procure a lessee for the Premises. Once a lessee was obtained, Elevation would earn a "commission [of] five percent (5%) of the total net leasehold payments for the first five years of the initial Lease term and four percent (4%) for the remaining period of the initial lease term." (Feb. 7, 2019 Am. Compl., Ex. B, Exclusive Authorization To Lease Agreement at 1.) NMRD contends that Elevation agreed to an oral medication of the written agreement forfeiting $25,000 of its commission as contribution to Kroger for waiver of the use restriction. Per the terms of the listing agreement, however, NMRD had already promised to pay Elevation its commission following the procurement of a lessee for the Premises. "[A]n oral agreement to modify a prior written agreement must be founded on a new consideration that is distinct from the consideration supporting the prior agreement; it cannot be supported on the supposition that it is founded on the continuation or extension of the consideration of the prior written contract that is complete in itself." *Ihenacho v. Ohio Inst. of Photography & Technology*, 2d Dist. No. 24191, 2011-Ohio-3730, ¶ 50, citing 17 Ohio Jurisprudence 3d, Contracts,

Section 41, at 390 (2008). Therefore, even assuming the parties mutually agreed to modify the listing agreement, NMRD's promise to pay the commission, minus $25,000, cannot be a bargained-for-detriment and fails to qualify as valid new and distinct consideration to support the contract modification. *Hanna* at ¶ 39.

{¶ 23} NMRD contends that the consideration for the modification of the listing agreement was to facilitate the completion of the lease agreement. NMRD posits that the lease agreement with HomeBuys would not have occurred absent the waiver of $25,000 by Elevation. However, no lease agreement was in place at the time of the alleged oral modification. The telephone conversations at issue predated the execution of the September 14, 2018 agreement. As such, NMRD asked Elevation for a reduction in the commission to do what it was already bound to do prior to the modification. Again, a pre-existing right to compensation is not new and distinct consideration. "A promise to do what the promisor is already bound to do cannot be a consideration, for, if a person gets nothing in return for his promise but that to which he is already legally entitled, 'the consideration is unreal.' " *Baldwin* at ¶ 16, quoting *Shannon v. Universal Mtge. & Discount Co.*, 116 Ohio St. 609, 621 (1927). Additional consideration has been previously identified, but is not limited to: late fees, attorney fees, costs, and additional interest. *Cor-Ben Consultants* at ¶ 22-24. Here, no such consideration was provided. *Aerel, S.R.L.* at 909-10 (finding the alleged oral modification to a written contract by the manufacturer to pay the disputed commission failed as a matter of law as it was not supported by new and distinct consideration).

{¶ 24} NMRD cites the September 14, 2018 "Agreement Relative to Restrictions" between NMRD and HomeBuys as evidence of the understanding of the parties to the modification. However, the document does not include Elevation as a signatory to the agreement. (Dec. 3, 2021 NMRD Trial Ex. 5.) Accordingly, even if the parties mutually agreed to the modification of the listing agreement, as a matter of law, the modification lacked new and distinct consideration to support the oral modification. Upon remand, the trial court is instructed to recalculate the commission to include the $25,000 that was excluded from the original entry.

{¶ 25} Elevation's first assignment of error is sustained.

**B. Appellant's Second Assignment of Error**

{¶ 26} In Elevation's second assignment of error, Elevation argues that the trial court erred by excluding the tenant improvement allowance in the lease agreement from the total amount on which its commission was due. Specifically, Elevation claims that the trial court erred as the listing agreement only permitted subtraction of "amortized improvements" from the commission and, as a matter of law, HomeBuys' "tenant improvement allowance" was not amortized.

{¶ 27} As set forth previously, construction and interpretation of a written contract is a question of law, which we review de novo. *J. Griffin Ricker Assocs., LLC v. Well*, 10th Dist. No. 21AP-29, 2022-Ohio-1470, ¶ 21, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus.

{¶ 28} Judicial review of a contract " 'begins with the fundamental objective of ascertaining and giving effect to the intent of the parties at the time they executed the agreement. * * * When a contract is not ambiguous, it must be enforced as written.' " *Campbell v. 1 Spring, LLC*, 10th Dist. No. 19AP-368, 2020-Ohio-3190, ¶ 5, quoting *CosmetiCredit, LLC v. World Fin. Network Natl. Bank*, 10th Dist. No. 14AP-32, 2014-Ohio-5301, ¶ 13-14. Contractual interpretation begins with the four corners of the agreement. *Campbell* at ¶ 6, citing *Drs. Kristal & Forche, D.D.S., Inc. v. Erkis*, 10th Dist. No. 09AP-06, 2009-Ohio-5671, ¶ 21. When the term of a contract is clear and unambiguous, the court may not consider evidence outside the agreement to discern its meaning. *Id*. However, in cases when the contractual language is ambiguous, or when circumstances in the contract gives the plain language special meaning, extrinsic evidence is used to determine the intent of the parties. *Id*. A reviewing court cannot in effect create a new agreement by finding an intent not expressed in the plain language of the contract. *Vandercar v. Port of Greater Cincinnati Dev. Auth*, 1st Dist. No. C-210643, 2022-Ohio-3148, ¶ 26, citing *Alexander* at 246.

{¶ 29} When a reviewing court is tasked with interpreting a contract, it must give words or phrases appearing in the agreement their ordinary meaning unless it creates a manifestly absurd result " 'or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.' " *Sutton Bank v. Progressive Polymers, L.L.C.*, 161 Ohio St.3d 387, 2020-Ohio-5101, ¶ 15, quoting *Alexander* at paragraph two of the syllabus.

Similarly, "technical terms are given their technical meaning 'unless a different intention is clearly expressed.'" *Sutton Bank* at ¶ 15, quoting *Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997).

{¶ 30} The listing agreement provides that the "[c]ommission shall not be paid for amortized improvements." (Feb. 7, 2019 Am. Compl., Ex. B, Exclusive Authorization To Lease Agreement at 1.) The phrase "amortized improvements" is not defined in the listing agreement. In cases where a word or phrase is not defined in the agreement, courts utilize dictionary definitions of the term to determine their ordinary meaning. *Vandercar* at ¶ 26, citing *Alexander* 247-48. "[A]mortization" is a common legal term defined in *Black's Law Dictionary* 103 (10th Ed.2014) as "[t]he act or result of gradually extinguishing a debt, such as a mortgage, usu. By contributing payments of principal each time a periodic interest payment is due."[2] *See also Black's Law Dictionary* 103 (10th Ed.2014) "amortization schedule" as "[a] schedule of periodic payments of interest and principal owed on a debt obligation; spec., a loan schedule showing both the amount of principal and interest that is due at regular intervals over the loan term and the remaining unpaid principal balance after each scheduled payment is made."

{¶ 31} Giving these terms their ordinary meaning, we cannot find that the "tenant improvement allowance" constitutes an "amortized improvement" as contemplated under the listing agreement. A careful reading of section 10.5 of the lease agreement reveals that NMRD agreed to pay HomeBuys no more than $458,952 for tenant improvements at the Premises. The lease agreement notes that payment of the tenant improvement allowance would be made over four installment payments and required documentation of invoices and original, recordable lien waivers from each material man and laborer for whom HomeBuys sought reimbursement. However, the plain language of the lease agreement lacks any indication that these improvements were considered "amortized" as there is no mention in the agreement of amortization, an amortization calculation, or discussion of interest on the payments. It is the duty of this court to give effect to the terms the parties employed in the agreement, and "'*not to delete words used or to insert words not used*.'"

---

[2] Merriam-Webster Dictionary offers a similar definition of "amortize" as "to pay off (an obligation, such as a mortgage) gradually usually by periodic payments of principal and interest or by payments to a sinking fund." Merriam-Webster Dictionary, "amortize," https://www.merriam-webster.com/ dictionary/amortizing (accessed December 7, 2023).

(Emphasis sic.) *DiMarco v. Shay*, 154 Ohio App.3d 141, 2003-Ohio-4685, ¶ 22 (10th Dist.), quoting *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 53 (1988).

{¶ 32} NMRD contends that the amortization was "bak[ed]" into the contract. (NMRD's Brief at 16-17.)  NMRD cites the trial testimony of Mo Dioun, special manager for NMRD, that "[NMRD] amortize[d] that over a 10-year period, our cost of funds, plus another percent or two to cover that risk, that's part of doing business." (Nov. 22, 2021 Tr. at 134.)

{¶ 33} The meaning of a written contract is ascertained through the language of the document and there can be no intendment or implication that is inconsistent with the plain language of the agreement.  *Phillips v. May*, 11th Dist. No. 2003-G-2520, 2004-Ohio-5942, ¶ 28, citing *Blosser v. Enderlin*, 113 Ohio St. 121 (1925), paragraph one of the syllabus; *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. " '[T]he relevant inquiry is the manifestation of intent of the parties as seen through the eyes of a reasonable observer, rather than the *subjective intention of the parties*.' "  (Emphasis added.) *Daily Servs., LLC*, 2023-Ohio-2462, at ¶ 47, quoting *Beneficial, Inc. v. Bolen*, 10th Dist. No. 94APE08-1202, 1995 Ohio App. LEXIS 2736, *10 (June 29, 1995).  Dioun's vague testimony as to the terms of the amortization, which are absent from the agreement, underscores this problem. The subjective intent of NMRD is irrelevant as no reasonable observer would believe that the parties intended the tenant improvement allowance to constitute an amortized improvement.  As such, NMRD's argument that the rate of amortization is "baked" into the agreement, without any evidence in the lease agreement, is not a reasonable interpretation of the term "amortize."  While the trial court made findings of fact concerning the credibility of the witnesses, we need not reach that issue as the contractual language is clear.

{¶ 34} Therefore, the trial court erred, as a matter of law, in its determination that the "tenant improvement allowance" in the lease agreement fell under the listing agreement's definition of "amortized improvements."  Upon remand, the trial court is instructed to recalculate Elevation's commission to include HomeBuys' tenant improvement allowance.

{¶ 35} Elevation's second assignment of error is sustained.

**C. Appellant's Third Assignment of Error**

{¶ 36} In Elevation's third assignment of error, Elevation argues that the trial court erred by awarding a portion of its commission directly to Trautner.

{¶ 37} Before we can consider Elevation's third assignment of error, we must address the procedural defect in its brief. Elevation's argument as to its third assignment of error is broken into two parts: (1) that the trial court erred in allowing Trautner to intervene and (2) the trial court erred in awarding damages directly to Trautner. Elevation's third assignment of error, however, only concerns the second argument and makes no references to the trial court's grant of intervention. Moreover, Elevation's arguments are derived from two separate entries. The first argument is based on the trial court's grant of intervention in its September 3, 2021 entry; the second argument concerns the January 20, 2022 entry awarding Trautner a distribution from the escrow account. Therefore, Elevation has improperly inserted an additional argument that is not attached to an identified assignment of error.

{¶ 38} As provided in App.R. 12(A)(1)(b), a reviewing court must "[d]etermine [an] appeal on its merits on the assignments of error set forth in the briefs under App.R. 16." " '[T]his court rules on assignments of error only, and will not address mere arguments.' " *Rider v. Dir. Ohio Dept. of Job & Family Servs.* 10th Dist. No. 16AP-854, 2017-Ohio-8716, ¶ 7, quoting *Ellinger v. Ho*, 10th Dist. No. 08AP-1079, 2010-Ohio-553, ¶ 70, citing *In re Estate of Taris*, 10th Dist. No. 04AP-1264, 2005-Ohio-1516, ¶ 5. Because Elevation's argument concerning the trial court's alleged error in granting intervention was not asserted in its third assignment of error, we decline to address it. *State v. Dixon*, 10th Dist. No. 17AP-884, 2018-Ohio-3759, ¶ 5, citing *Bonn v. Bonn*, 10th Dist. No. 12AP-1047, 2013-Ohio-2313, ¶ 9 ("[w]e will address each assignment of error as written and disregard any superfluous arguments not raised by the actual assignment of error under review"); *Blevins v. Blevins*, 10th Dist. No. 14AP-175, 2014-Ohio-3933, ¶ 12. Accordingly, Elevation's extraneous argument concerning the trial court's decision to permit Trautner to intervene in the case is not properly asserted and, therefore, will be disregarded on appeal. App.R. 16(A)(7); 12(A)(2). Instead, we will focus our analysis on whether the trial court erred in awarding funds directly to Trautner in the January 20, 2022 judgment entry.

{¶ 39} Pursuant to R.C. 4735.21:

> No real estate salesperson or foreign real estate salesperson shall collect any money in connection with any real estate or foreign real estate brokerage transaction, whether as a commission, deposit, payment, rental, or otherwise, except in the name of and with the consent of the licensed real estate broker or licensed foreign real estate dealer under whom the salesperson is licensed at the time the sales person earned the commission.

{¶ 40} Upon review, the plain language of R.C. 4735.21 provides that Trautner cannot directly receive any money in connection with a real estate brokerage transaction unless it is "in the name of and with the consent of the licensed real estate broker * * * under whom the salesperson is licensed at the time the sales person earned the commission." Here, there is no dispute that the trial court awarded funds directly to Trautner that were not "in the name of and with the consent of the licensed real estate broker," Elevation. The trial court, therefore, erred by awarding a portion of the commission directly to Trautner in its final judgment entry.

{¶ 41} Trautner contends that R.C. 1311.92(A) controls in this case as the statute provides, "[t]he moneys shall be held in escrow and shall only be released as ordered by a court of competent jurisdiction, or as directed by agreement of the broker and owner or by any process agreed to by the broker and owner."

{¶ 42} When two statutes are purportedly in conflict, R.C. 1.51 instructs the reviewing court to construe them, if possible, to give effect to both statutes. *State ex rel. Data Trace Information Servs., L.L.C., v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, ¶ 48, citing *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 234 (2001). "Only where the conflict is deemed *irreconcilable* does R.C. 1.51 mandate that one provision shall prevail over the other." (Emphasis sic.) *Id.* at ¶ 48, citing *United Tel. Co. of Ohio v. Limbach,* 71 Ohio St.3d 369, 372 (1994).

{¶ 43} Here, R.C. 4735.21, amended September 29, 2011, is a specific provision concerning limitations of real estate salespersons collecting funds in a real estate brokerage transaction. Conversely, R.C. 1311.92, enacted on August 28, 1997, is a general provision regarding the establishment of an escrow account to enable a transfer of lien property to close when a broker's perfected lien may otherwise prevent the closing. Given the particularity and more recent amendment of R.C. 4735.21, we conclude the legislature

intended R.C. 4735.21 to control in this instance. Trautner's interpretation would frustrate the function of R.C. 4735.21 as it would create a work around to allow for salespersons to seek payment outside the broker provided that those funds are held in escrow.

{¶ 44} To be sure, Trautner has succeeded in protecting her interest in the commission. While Trautner's failure to assert a cause of action does not necessarily prevent subsequent litigation of this issue, it does complicate the question upon remand as to how the trial court should resolve distribution of the remaining funds. Because we have concluded that the trial court erred in directly awarding Trautner funds from the escrow account, we decline to address Elevation's alternative arguments. Upon remand, the trial court is instructed to resolve whether Trautner must bring a separate cause of action to procure these funds. If not, the trial court should conduct a damages hearing in order to consider what, if any, percentage of funds that Trautner is entitled to based on her work to secure the lease agreement.

{¶ 45} Elevation's third assignment of error is sustained.

**D. Appellant's Fourth Assignment of Error**

{¶ 46} In Elevation's fourth assignment of error, it argues that the trial court erred by failing to include prejudgment interest in its final award in violation of R.C. 1343.03(A) and 1311.88(C). A reviewing court will not reverse the trial court's award or denial of prejudgment interest absent an abuse of discretion. *MNM & MAK Ent., LLC v. HIIT Fit Club, LLC*, 10th Dist. No. 18AP-980, 2019-Ohio-4017, ¶ 14.

{¶ 47} After a review of the January 20, 2022 judgment entry, we conclude that the trial court failed to address prejudgment interest despite Elevation's request for it to make such an award in the amended complaint as well as various stages of the litigation. " 'Where a trial court's judgment is not sufficiently detailed, a reviewing court may be left in the unfortunate position of being unable to provide meaningful review.' " *Ocwen Loan Servicing, LLC v. McBenttes*, 9th Dist. No. 29343, 2019-Ohio-4884, ¶ 8, quoting *Zemla v. Zemla*, 9th Dist. No. 11CA0010, 2012-Ohio-2829, ¶ 19; *Lynda Hughes Dawson Lumber, Inc. v. Hummel*, 2d Dist. No. 09-CA-07, 2010-Ohio-4918, ¶ 3 (remanding the case back to the trial court as the prior decision failed to address the issue of prejudgment interest).

{¶ 48} Accordingly, we reverse the judgment of the trial court to the extent that it failed to address the subject prejudgment interest. *Wilmoth v. Akron Metro. Hous. Auth.*,

9th Dist. No. 27746, 2016-Ohio-3441, ¶ 25 ("when the trial court fails to address a claim in the first instance, we are left with no choice but to reverse the judgment and remand the matter for the trial court to address it"). This issue is remanded back to the trial court to consider whether Elevation is entitled to prejudgment interest in its final award under R.C. 1311.88 or 1343.03.

**{¶ 49}** Elevation's fourth assignment of error is sustained.

### E. Appellant's Fifth Assignment of Error

**{¶ 50}** In Elevation's fifth assignment of error, it argues that the trial court erred by failing to award attorney fees in its final judgment entry.

**{¶ 51}** Ohio follows the "American Rule" with respect to the recovery of attorney fees. The "American Rule" dates back to eighteenth century common law and generally requires each party in litigation to pay their own attorney fees. *Pasco v. State Auto. Mut. Ins. Co.*, 10th Dist. No. 04AP-696, 2005-Ohio-2387, ¶ 9, citing *Sorin v. Bd. of Edn.*, 46 Ohio St.2d 177, 179 (1976); *Cruz v. English Nanny & Governess School*, 169 Ohio St.3d 716, 2022-Ohio-3586, ¶ 35, citing *Baker Botts, L.L.P. v. ASARCO, L.L.C.*, 576 U.S. 121, 126 (2015), citing *Arcambel v. Wiseman*, 3 U.S. 306 (1796). The Supreme Court of Ohio has explained, " '[t]he rationale behind the American rule is that because "litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel." ' " *Cruz* at ¶ 35, quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967).

**{¶ 52}** While attorney fees are typically not recoverable in contract disputes, *see, e.g.*, *First Bank of Marietta v. L.C. Ltd.*, 10th Dist. No. 99AP-304, 1999 Ohio App. LEXIS 6504 (Dec. 28, 1999), there are several allowed exceptions. *Cleveland Constr., Inc. v. Ruscilli Constr. Co.*, 10th Dist. No. 18AP-480, 2023-Ohio-363, ¶ 25, citing *Orth v. State*, 10th Dist. No. 14AP-937, 2015-Ohio-3977, ¶ 12. Recovery of attorney fees is permitted in cases where "[1] a statute authoriz[es] attorney fees, [2] a finding of bad faith conduct by one party, or [3] a fee-shifting provision in the parties' agreement." *Id.*

**{¶ 53}** This court will generally review the trial court's determination concerning attorney fees for an abuse of discretion. *Pasco* at ¶ 9, citing *Motorists Mut. Ins. Co. v. Brandenburg*, 72 Ohio St.3d 157, 160 (1995). In this case, however, the trial court denied

Elevation attorney fees based on the finding that "[t]here [was] no statutory authority" to award attorney fees because "Elevation's broker lien enforcement claim was extinguished upon the payment of the deposit to the clerk of courts," which the trial court found extinguished "any right to attorney fees under R.C. 1311.88." (Jan. 22, 2020 Findings & Jgmt. Entry at 4.) As such, the applicability of a statute is a question of law, which we review de novo on appeal. *TBF Fin. LLC v. Wilkerson*, 10th Dist. No. 18AP-974, 2019-Ohio-3493, ¶ 11, citing *Broadmoor Ctr., LLC v. Dallin*, 10th Dist. No. 16AP-428, 2016-Ohio-8541, ¶ 19 ("[s]tatutory interpretation is a question of law reviewed de novo on appeal.").

{¶ 54} Preliminarily, we must resolve which iteration of R.C. 1311.88(C) controls. Prior to March 31, 2021, R.C. 1311.88(C) provided, "[i]n an action based on a broker's lien, a court may assess the nonprevailing parties with costs and reasonable attorney's fees incurred by the prevailing parties." Effective March 31, 2021, the amended language of R.C. 1311.88(C) reads in relevant part: "[i]n an action based on a broker's lien, a court shall assess the nonprevailing parties with all costs and reasonable attorney's fees incurred by the prevailing parties." By removing the permissive language of "may" and replacing it with the mandatory term of "shall," the General Assembly indicated an intention to remove the trial court's discretionary review of whether attorney fees could be assessed against the nonprevailing party in cases based on a broker's lien.

{¶ 55} Generally, a statute is presumed to be prospective in its application unless expressly stated otherwise. R.C. 1.48; *Prairie Twp. Bd. of Trustees. v. Ross*, 10th Dist. No. 03AP-509, 2004-Ohio-838, ¶ 7, citing *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 105 (1988). The same is true concerning previously enacted statutes as any such amendment does not affect the prior operation of the statue or any pending proceedings unless expressly provided. R.C. 158. Thus, a change to a statutory provision has no bearing on a case already pending before the trial court unless the General Assembly expressly stated otherwise. In this case, the amendment to R.C. 1311.88 took effect after the initial complaint was filed on January 11, 2019. Because the most recent amendment to R.C. 1311.88(C) does not specifically state that it was intended to apply retroactively, the version of R.C. 1311.88(C) in effect until March 31, 2021 would control.[3]

---

[3] At oral arguments, counsel for Elevation conceded that the version of R.C. 1311.88(C) in effect until March 31, 2021 would apply under the facts of this case.

{¶ 56} The first question is whether Elevation is the "prevailing party" in this case. In the absence of other applicable statutory definitions, this court has applied the definition of "prevailing party," per Black's Law Dictionary, as " '[a] party in whose favor a judgment is rendered.' " *Winona Holdings, Inc. v. Duffey*, 10th Dist. No. 13AP-471, 2014-Ohio-519, ¶ 9, quoting *Black's Law Dictionary* 1232 (9th Ed.2009); *see also Id*. at ¶ 9, quoting *Hikmet v. Turkoglu*, 10th Dist. No. 08AP-1021, 2009-Ohio-6477, ¶ 74 (defining "prevailing party" as the party "in whose favor the verdict or decision is rendered and judgment entered."). A prevailing party is one that has obtained some relief in the case, even if they did not sustain all of their claims. *Lake Breeze Condominium Homeowners' Assn. v. Eastlake Ohio Developers, LLC*, 11th Dist. No. 2021-L-124, 2022-Ohio-3002, ¶ 48, citing *J.B.H. Props. v. N.E.S. Corp.*, 11th Dist. No. 2007-L-24, 2007-Ohio-7116, ¶ 15.

{¶ 57} It appears from the judgment entry that the trial court has implicitly deemed Elevation the prevailing party. In its discussion of attorney fees, the trial court explained that the prevailing party is only entitled to attorney fees under limited circumstances then proceeds to examine, and ultimately reject, Elevation's claim under those allowed exceptions. Such an analysis would be unnecessary—if not illogical—had the trial court not concluded Elevation was the prevailing party. Regardless, we need not defer to the trial court's determination as the finding that a plaintiff is the "prevailing party" is subject to a de novo standard. *Simbo Props. v. M8 Realty, L.L.C.*, 8th Dist. No. 107161, 2019-Ohio-4361, ¶ 36, citing *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720 ¶ 23 (8th Dist.), citing *Jenkins by Jenkins v. Missouri*, 127 F.3d 709, 713 (8th Cir.1997); *Keller v. City of Cincinnati*, 1st Dist. No. C-200024, 2021-Ohio-1420, ¶ 21. Based on the trial court's finding that Elevation was entitled to the commission, as well as our conclusion that the trial court erred in its resolution of the first two assignments of error, there is no doubt that Elevation was the prevailing party in this action.

{¶ 58} Next, we must consider whether this "action [is] based on a broker's lien" as stated in R.C. 1311.88(C). The amended complaint alleges that NMRD breached the listing agreement by failing to pay the commission for securing HomeBuys as a lessee of the Premises. On December 17, 2018, Elevation recorded a broker's lien against the Premises based on the breach of contract alleged in the complaint. After NMRD deposited funds in escrow, the trial court, guided by R.C. 1311.92, ordered the release of the broker's lien on

September 27, 2019. Here, the plain language of R.C. 1311.88(C) only requires that the action be "based on a broker's lien." *See Nosal v. Szabo*, 8th Dist. No. 83975, 2004-Ohio-4076, ¶ 31-32 (finding that, under the plain language of R.C. 1311.88, "[t]he instant 'action' is based, in part, on brokers' liens that were filed by appellees to preserve their commission fees and, in part, based on [appellant's] failure to honor the written agreement to which he signed to pay those commission fees."). While NMRD's payment of the deposit to the clerk of courts extinguished the broker lien under R.C. 1311.92 as a matter of law, which was replaced with an equitable lien on the escrow funds, R.C. 1311.88 does not require the lien to be in place at the time of the award. Therefore, we conclude this matter was based on a broker's lien as intended under R.C. 1311.88.

{¶ 59} Because we find that Elevation constitutes the "prevailing party" in this case and that the matter is "based on a broker's lien," the trial court erred, as a matter of law, finding that attorney fees were not available to Elevation under the statute. Whether the trial court, in its discretion, elects to award Elevation attorney fees is a separate question we need not answer at this time. Upon remand, the trial court is instructed to determine whether Elevation is entitled to attorney fees and, if so, apportion the assessed costs and attorney fees consistent with R.C. 1311.88(C).

{¶ 60} Elevation's fifth assignment of error is sustained.

## IV. CONCLUSION

{¶ 61} Having sustained Elevation's first, second, third, fourth, and fifth assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas, and remand it back for further proceedings.

*Judgment reversed and remanded.*

DORRIAN and JAMISON, JJ., concur.

————————————